## UNITED STATES v. BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA.

Circuit Court of Appeals, Tenth Circuit. December 27, 1929.

No. 107.

McDERMOTT, Circuit Judge. In 1878 the Presbyterian Church, at its own expense, constructed a mission building on a small tract of ground belonging to the Pueblo Indians. The land involved is less than an acre, is above the ditch, and is of little value.

In 1928 the government amended a bill then pending, involving other lands and parties, which amendment alleged the underlying title of the Pueblo to the land, and that the Presbyterian Church entered the land in controversy about 1878 by virtue of a certain alleged permission or license in writing, by the terms of which the property herein involved "be and hereby is devoted to school purposes for the benefit of said Pueblo so long as the parties building the house shall maintain a school upon said premises for the benefit of said Pueblo." The license stated that a house was "being built thereupon for mission and school purposes." The bill then alleged that the defendant had failed, at various periods, to maintain a school therein, and that the license, if ever valid, was thereby extinguished. That "the governing authorities of said Pueblo" have demanded possession, without avail. The prayer of the bill is that the license of 1878 be delivered up for cancellation; that the defendant set up its rights, and that it be decreed that such rights, by way of easement or otherwise, be decreed null and void.

The defendant denied the existence and validity of the written license pled; alleged that a school had been conducted since 1878; and that title had been acquired by adverse possession.

Upon the trial the evidence showed that the Church erected the mission about 1878, and maintained a school for the benefit of the Pueblo until about 1896. That during most of that period the resident missionary was paid by the government as a teacher, as well as by the Church. That in 1896 the government leased the mission of defendant, and conducted a government school until 1909, at which date the defendant retook possession. There is some dispute in the evidence as to how much school there was after 1909, but there is evidence from a government witness than the only time in fifteen years that school was discontinued was between 1922 and 1924, and during those two years there was Sunday School and preaching every week or two. There was some conflict in the evidence as to the attitude of the Indians and their tribal authorities toward the school in the early years. There

George A. H. Fraser, Sp. Asst. to Atty. Gen., for appellant.

E. C. Iden, of Albuquerque, N. M. (Reid, Hervey & Iden, of Albuquerque, N. M., on the brief), for appellee.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

is no evidence that the authorities of the government objected to the presence of the school. A written agreement offered by the government, to support its allegation of license or permission, was excluded as not properly identified.

The trial court found generally for the defendant, and specifically found adverse possession and that "defendant had maintained a church and Sunday School, and to some extent, a day school on said property since defendant first entered thereon, and that, for a time, said church and property was rented to the Government for the purpose of conducting a Government school; that defendant has been careful, during all the years since it took possession of said land, to have some one in possession thereof and in authority over same; that, from the outset, the Indians disputed the title or right of possession of this land that defendant had, and have been more or less hostile thereto at all times since the original entry of defendant upon said property; that said land is practically worthless to the Indians, but is of much value to the church."

■ The findings of the trial court, on matters in dispute, are presumptively correct, even in equity. United States v. Detroit Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499; Thallmann v. Thomas (8 C. C. A.) 111 F. 277; New York Life Insurance Co. v. Griffith (10 C. C. A.) 35 F.(2d) 945; United States v. Peterson (10 C. C. A.) 34 F.(2d) 245. The evidence justifies the finding as to the conduct of the school. Between 1896 and 1909, the school was conducted by the government, under an agreement with the defendant; the government is therefore in no position to complain of the failure of the defendant to conduct the school during that period. There is no showing that between 1922 and 1924 there were enough pupils available to make a day school practicable. The defendant is not required to conduct a school without pupils; if it stands ready to conduct either day or Sunday School, whenever such work will be of substantial benefit to the Indians, it has done its part. The evidence also justifies the finding that the Indians were hostile to the defendant's claim in the early years.

■ It is now settled that the Pueblo Indians are wards of the government. United States v. Sandoval, 231 U. S. 28, 34 S. Ct. 1, 58 L. Ed. 107; United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 70 L. Ed. 1023. They are subject to the general rule that "no stipulations, contracts or judg-

ments rendered in suits to which the government is a stranger, can affect its interest." United States v. Candelaria, supra; Sims v. Everhardt, 102 U. S. 300, 26 L. Ed. 87; Bartlett v. Okla Oil Co. (D. C.) 218 F. 380, affirmed (8 C. C. A.) 236 F. 488; Goodrum v. Buffalo (8 C. C. A.) 162 F. 817. It is also true, of course, that mere possession is presumed to be in subordination to the title of the owner. Collins v. Riley, 104 U. S. 322, 26 L. Ed. 752. But the presumption is not conclusive.

■ From these authorities, appellant argues that no title by adverse possession can be acquired, unless the possession is adverse to the United States, the guardian, as well as adverse to the Indian, the ward. Conceding, for present purposes, the soundness of this claim as to restricted Indians generally, it is nevertheless true that a peculiar situation exists with reference to the Pueblo. Prior to 1913, the Pueblo was treated as sui juris; the territorial courts of New Mexico had so held. In United States v. Joseph, 94 U. S. 614, 618, 24 L. Ed. 295, it was held that the title of the Pueblo was "superior to that of the United States" and that the government had no right of "present or future interference, except such as would be exercised in the case of a person holding a competent and perfect title in his individual right." The Sandoval Case held that the power of Congress over the Pueblo was such that it could prohibit the introduction of intoxicating liquors into their lands; and in the Candelaria Case, supra, it was held that the lands of the Pueblo were within the sweeping prohibition of the Non-Intercourse Act of 1834 (4 Stat. 729), as amended in 1851 (9 Stat. 587, § 7). Congress then passed the Pueblo Lands Act (43 Stat. 636 [25 USCA § 331 note]), and by it recognized the equities of others which had arisen prior to these decisions. Section 4 authorizes persons claiming title to Pueblo lands to plead limitation of action (a) if they or their predecessors "have had open, notorious, actual, exclusive, continuous, adverse possession * * * under color of title from the 6th day of January, 1902," and (b) the same possession, "but without color of title from the 16th day of March, 1889." Possession adverse to whom? Remembering that prior to 1913 it was thought that the government had no right of guardianship over their lands, it is at least arguable that Congress had in mind a possession adverse to the Indian alone. But, for reasons presently to be stated, we need not now decide the question.

We do not think, however, that the evidence justifies a finding that the defendant, during the years in question, was asserting a claim to do more than to occupy the lands for the purpose of conducting a school and giving religious nurture. That was its only purpose there. The responsible authorities of the Church would be the last to assert that, while engaged on this educational and religious work, it was undertaking to appropriate the fee title to land that belonged to the Indians they were trying to help. The truth must be that the right claimed by the defendant was the right to conduct a day or Sunday school, or both, as the circumstances might from time to time justify, and not to acquire the title to real estate. The learned trial court was first of this opinion, for at the conclusion of the trial, he said:

"The only question that appears to be presented is whether or not the church acquired fee simple title or a limited title, that is, the right to use and occupy the premises for church, school and mission purposes."

His final conclusion, based largely on the worthlessness of the land to the plaintiff and its value to the defendant, was to decree a fee-simple title to the defendant. We believe his first impression the sound one.

Assuming, then, that the facts show a possession for this limited purpose, as against the Pueblo: What then, of the possession as against the United States? It must have been either adverse or permissive. The defendant alleges it was adverse, and the government alleges it was permissive. In our opinion, the government's contention is correct. The trial court excluded, and we think properly, a copy of a written license. But there was other evidence: The payment of a salary by the government to resident missionaries; the construction of substantial improvements, which would scarcely have been done without governmental consent to conduct a school; and the occupation of the premises for half a century without objection by the government. Disregarding the written license, the evidence convinces us that the defendant entered upon the land, and built these buildings, under an understanding that the land could be occupied as long as the philanthropic work was carried on. The government contends that the philanthropic work has been abandoned. The trial court found to the contrary, and the evidence shows that while there have been interruptions in the past, they have been condoned; the work has not been abandoned, and is now being carried on.

But whether the possession, as against the government, was adverse or permissive, the government cannot oust the defendant as long as there is a substantial compliance with the purpose of the entry. If adverse, as defendant claims, the suit fails because of the statute; if permissive, as the government contends, the suit fails because it would be inequitable to presently oust the defendant from the premises, since it made substantial expenditures on the strength of a permission, the terms of which have not been broken.

The decree should be modified by striking out the phrase "with prejudice," and inserting in lieu thereof the phrase "without prejudice to renew its action when and if the defendant ceases to occupy the premises for mission or school purposes," and as so modified, it is affirmed.