## MANDLER et al. v. UNITED STATES.
### No. 219.

Circuit Court of Appeals, Tenth Circuit.
April 6, 1931.

Paul Pinson, of Tulsa, Okl. (Walter L. Ransom, of Sapulpa, Okl., and D. H. Linebaugh, of Muskogee, Okl., on the brief), for appellants.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

Appellee brought this suit on behalf of Katie Grayson. Appellants, Mandler, Ransom and Tiger, defendants below, moved to dismiss the amended bill, which was overruled. They refused to plead further, elected to stand on their motion to dismiss, and the court at once entered decree for plaintiff.

The amended bill alleged that Katie Grayson is an enrolled full blood Creek Indian, appellant's ward, and the suit is in her behalf; that under the General Allotment Act of February 8, 1887 (24 Stat. 388), Nan-pe-chee Polecat, a Shawnee Indian of that blood was enrolled as an absentee Shawnee and there was allotted and patented to her a Shawnee allotment; that, thereafter, by virtue of the Act of June 28, 1898 (30 Stat. 495) the Dawes Commission, without knowledge of Nan-pe-chee's enrollment and allotment as an absentee Shawnee Indian and as a result of gross mistake of law and of fact, entered the name of Nan-pe-chee upon the Creek rolls, and pursuant to said enrollment there was allotted to her certain lands of the Creek Tribe; that, thereafter, patent was issued purporting to convey said lands to Nan-pe-chee, but that before delivering said patent to her the Dawes Commission was advised and learned of its said mistake in erroneously placing Nan-pe-chee's name upon the Creek rolls, and said patent or deed was never delivered; that Nan-pe-chee died in October, 1902, unmarried and intestate, leaving a son of tender years, to-wit, defendant Tiger, her sole heir, and the allotment of Creek lands to said Nan-pe-chee was then dealt with as shown by exhibits attached to the bill; that the Dawes Commission, after discovering or being advised of its mistake of fact, caused the Secretary of the Interior to enter a certain order or judgment under date of April 11, 1904, striking the name of Nan-pe-chee from the Creek rolls and cancelling her allotment and patent. That, thereafter, the said lands that had been allotted to Nan-pe-chee were with other lands allotted to Katie Grayson, a full blood Creek Indian and enrolled as such, and a patent therefor was issued in her favor and delivered to her, and she has since been in possession. That the defendants claim some right, title or interest in and to the lands as shown by certain conveyances, some of which were made by Tiger after he reached his majority and some by his grantees; also, that a decree had been entered by the district court of Creek county, Oklahoma, in a suit wherein Mandler was plaintiff and Katie Grayson, et al., were defendants which purported to find and hold that Katie Grayson had no title to or interest in said land. Plaintiff below asked for decree striking the name Nan-pe-chee from the Creek rolls, that the allotment and patent issued to her pursuant to her enrollment be also cancelled and held for naught because of said mistake of law and fact, and that title be adjudged in Katie Grayson and quieted in her as against the claims of said defendants. The decree

adjudged Katie Grayson owner in fee, that defendants had no title or interest and that they be enjoined from asserting any claim or title. The decree did not adjudge that the enrollment of Nan-pe-chee nor the patent to her should be cancelled, nor her name stricken from the rolls. The decree in the state district court in Mandler's suit against Katie Grayson does not bar the United States from prosecuting this suit as her guardian. United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 70 L. Ed. 1023.

■ Exhibits attached to the bill and made a part thereof by reference consist of deeds or patents, one issued to Nan-pe-chee and later one to Katie Grayson for the same land. The deed to Nan-pe-chee executed by the principal chief of the Muskogee Nation and approved by the Secretary of the Interior in May, 1903, was filed for record and recorded in that month in the office of the Dawes Commission. Across the record of this deed has been put the word, "Cancelled," also this, "Name stricken from roll. Departmental letter April 11, 1904." Also a marginal note on said page: "Cancelled by order of Department." The deed to Katie Grayson was issued June 24, 1905. The other attached exhibits consist of correspondence between the Dawes Commission, the Secretary of the Interior and the Commissioner of Indian Affairs. It began on February 25, 1903, and closed on April 30, 1904. The statements in that correspondence disclose that the Creek roll of Creek citizens by blood, containing the name of Nan-pe-chee, was approved by the Secretary of the Interior November 14, 1902, that Shawnee lands had been allotted to Nan-pe-chee as an absentee Shawnee, that Nan-pe-chee's father, while the inquiry was being made about the claimed mistake, was found among the Creeks. He also had received a Shawnee allotment and thereafter a Creek allotment. He was requested to select which of the two he would retain and surrender the other, and after examining the two he chose his Shawnee allotment, but his daughter, Nan-pe-chee, seems to have died at the age of twenty years before that investigation was made, while she was living among the Creeks. The Commissioner of Indian Affairs and the Dawes Commission requested the Secretary of the Interior to cancel the name of Nan-pe-chee from the Creek roll, to cancel her allotment and her deed, and the Secretary by letter to the Commission directed that the cancellations be made. They were then cancelled.

As already observed, the amended bill alleges that the name of Nan-pe-chee was placed on the Creek roll under the Curtis Act (30 Stat. 495), and the deed to her purported that her allotment was made under the Act of March 1, 1901 (31 Stat. 861), the Creek Agreement ratified by that nation May 25, 1901.

The Curtis Act (30 Stat. 495, 503) authorized and directed the Commission to make a correct roll of the citizens by blood of the Creek Tribe, and provided that "the rolls so made, when approved by the Secretary of the Interior, shall be final. * * *" The Creek Agreement (31 Stat. 861) provided that all lands of said tribe should be allotted among its citizens by the Dawes Commission.

The amended bill asks for a decree striking the name of Nan-pe-chee from the Creek rolls and cancelling her allotment certificate and patent or deed, but the decree did not touch those subjects. It was confined to other relief asked. It adjudged title in Katie Grayson, quieted that title in her and enjoined defendants from making claim to the land. In substance the controversy was one of title between Katie Grayson and Tiger and his grantees. They claimed title through Nan-pe-chee. But the deed of the principal chief, executed April 14, 1903, on behalf of his nation and which purported to convey its right, interest and title in the land to Nan-pe-chee, was not delivered. It did not pass title to her or to her heir. The Creek Agreement, section 23 (31 Stat. 868), so provides. It says:

"Any allottee accepting such deed shall be deemed to assent to the allotment and conveyance of all the lands of the tribe, as provided herein, and as a relinquishment of all his right, title, and interest in and to the same. * * *"

Assistant Attorney General Willis Van Devanter, now Associate Justice of the Supreme Court, so advised the Secretary of the Interior on April 24, 1902. He said:

"The acceptance of the deed by the allottee is to be taken as assent on his part of the allotment and sale of the lands of the tribe, as in said agreement provided, and as a relinquishment of all his right, title and interest in and to the same, except in the proceeds of the land reserved from allotment. Not until such deed is executed, approved and accepted is the transaction completed and the title vested in the allottee."

Afterward, on February 18, 1904, Secretary Hitchcock in a written opinion in a

contest of title between two Creek citizens, entitled Lobay Major v. Lou Thompson (I. T. D. 6752-1903), said this on the subject:

"The acceptance of the deed has the effect of the execution and delivery of a deed of release of the allottee's interest in the other communal lands allotted to others of the tribe, like the voluntary deed in partition of one of several common owners. This makes acceptance of the deed a part of the transaction of partition or allotment of the communal property in severalty to the individual members of the communal owners. Such deed is therefore not the equivalent of a patent by the United States to public lands. The individual entryman has no interest in the mass of public lands, and has nothing therein to release. At or before the time of the final entry he renders the full consideration for the land he seeks to acquire, and his assent to the passing of legal title to him is complete at the instant of the final entry. The patent when issued relates to that date, though issued long afterwards. The issue and record of the patent vest legal title, whether it is delivered or not. (United States [ex rel. McBride] v. Schurz, 102 U. S. 378, [26 L. Ed. 167].) But the nature of Indian titles and effect given by the statute to the delivery and acceptance of the tribal deed make the doctrine of that case clearly inapplicable to allotment deeds."

A deed in form like the one to Nan-pe-chee was issued to Katie Grayson on June 24, 1905, was delivered to her and she has been in continuous possession ever since. The motion to dismiss admitted these allegations of fact. Katie Grayson, therefore, took and has held the legal title and possession since, and the greater equities are, in our opinion, also with her. The facts stated and admitted support the decree.

Decree affirmed.