## PUEBLO OF PICURIS IN STATE OF NEW MEXICO v. ABEYTA et al.

### No. 444.

Circuit Court of Appeals, Tenth Circuit.

May 22, 1931.

R. H. Hanna and Fred E. Wilson, both of Albuquerque, N. M., for appellant.

Wm. J. Barker and Charles Fahy, both of Santa Fé, N. M., and Floyd W. Beutler, of Taos, N. M., for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PER CURIAM.

Section 1 of the Pueblo Lands Act (43 Stat. 636 [25 USCA § 331 note]) provides:

"That in order to quiet title to various lots, parcels, and tracts of land in the State of New Mexico for which claim shall be made by or on behalf of the Pueblo Indians of said State as hereinafter provided, the United States of America, in its sovereign capacity as guardian of said Pueblo Indians shall, by its Attorney General, file in the District Court of the United States for the District of New Mexico, its bill or bills of complaint with a prayer for discovery of the nature of any claim or claims of any kind whatsoever adverse to the claim of said Pueblo Indians, as hereinafter determined."

In compliance with this section, the Attorney General brought this action in the name of the United States as guardian of the Indians of the Pueblo of Picuris. The decision in the court below was adverse to the United States as to a portion of the lands in controversy. The Attorney General declined to appeal from said decision, although urged to do so by the pueblo. Thereupon the pueblo filed its petition for appeal, alleging that it is a corporation organized under the laws of the state of New Mexico, and a community of Pueblo Indians, and the owner in fee simple, under a grant from the King of Spain, of the lands in controversy. The petition for appeal alleges that the pueblo was advised that it had no right to intervene in said suit, and did not in fact intervene, but that it did co-operate with the Attorney General in the trial of said cause, and that it is the party beneficially interested in the determination thereof. The trial court declined to allow the appeal, the petitioner not being a party to the litigation; the appeal was allowed by a Circuit Judge for the purpose of permitting the matter to be presented to this court. The appellees now move to dismiss the appeal.

It was held, prior to the enactment of the Pueblo Lands Act, that the pueblo was a juristic person, able to sue and defend with respect to its land. Lane v. Pueblo of Santa Rosa, 249 U. S. 110, 39 S. Ct. 185, 63 L. Ed. 504. Any decree or judgment rendered in an action brought by or against such pueblo did not, however, bind the United States in its sovereign capacity as guardian of such Indians, and was not therefore res judicata in another action involving the same controversy brought by the United States. United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 70 L. Ed. 1023. Section 4 of the Pueblo Lands Act (43 Stat. 637 [25 USCA § 331 note]) preserves the "existing right of the Pueblo Indians of New Mexico to assert and maintain unaffected by the provisions of this Act their title and right to any land by original proceedings, either in law or equity, in any court of competent jurisdiction and any such right may be asserted at any time prior to the filing of the field notes and plats as provided in section 13 hereof, and jurisdiction with respect to any such original proceedings is hereby conferred upon the United States District Court for the District of New Mexico with right of review as in other cases."

It thus appears that at any time prior to the filing of the field notes and plats by the Secretary of the Interior in the office of the Surveyor General of New Mexico (Pueblo Lands Act, § 13, 43 Stat. 640 [25 USCA § 331 note]) either the United States or the pueblo may maintain an action involving the title and right to lands of the pueblo; but a decree rendered in a suit brought by the pueblo does not bind the United States, while a decree rendered in a suit brought by the United States does bind the pueblo.

In Mars v. McDougal (C. C. A. 10) 40 F. (2d) 247, certiorari denied 282 U. S. 850, 51 S. Ct. 28, 75 L. Ed. ——, it appeared that the United States, as guardian for certain Creek Indians, had brought an action to recover certain lands in Oklahoma for such Indians; that action had been dismissed with prejudice upon the motion of the Attorney General. Thereafter Mr. Mars, claiming under such Creeks, brought an action involving the same controversy, and contended that the dismissal of the earlier case was not a bar because the Attorney General had no power to dismiss with prejudice an action brought for the benefit of Indian wards. This court held that the contention was groundless, and said, at page 249 of 40 F.(2d):

"Since the United States, acting through its Attorney General, has the power to main-

tain such a suit, it would be a strange situation, indeed, if the Attorney General could not dismiss such suit with prejudice upon discovery that it was groundless. We conclude that power is vested in the Attorney General, as the head of the department of justice, to initiate, control and dismiss such a suit. United States v. San Jacinto Tin Co., 125 U. S. 273, 281, 8 S. Ct. 850, 31 L. Ed. 747; United States v. Throckmorton, 98 U. S. 61, 70, 25 L. Ed. 93; United States v. Beebe, 127 U. S. 338, 342, 8 S. Ct. 1083, 32 L. Ed. 121."

██ This case controls the disposition of this motion. The statutory power of the United States to initiate actions for the Pueblo Indians necessarily involves the power to control such litigation. If the private attorneys of the pueblo could dictate the averments of the bill, or could prevail in questions of judgment in the introduction of evidence, there would be no substance to the guardianship of the United States over the Indians. There cannot be a divided authority in the conduct of litigation; divided authority results in hopeless confusion. If the United States has power to dismiss with prejudice prior to trial, as has been held, it certainly has power to decline to appeal after trial, if it believes the decision of the trial court is without error.

The motion to dismiss the appeal will be sustained, and the costs assessed to the appellees.