### SMYTH v. UNITED STATES.
### No. 1532.

Circuit Court of Appeals, Tenth Circuit.
July 1, 1937.
Rehearing Denied Nov. 10, 1937.

---

[4] No opinion for publication.

Claude I. Depew, of Wichita, Kan. (W. E. Stanley, of Wichita, Kan., on the brief), for appellant.

Helen R. Carloss, of Washington, D. C. (James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, C. S. Titus, and E. F. McMahon, Sp. Assts. to the Atty. Gen., and S. S. Alexander, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

This action was brought by the United States to recover $18,427.32 alleged to have been erroneously refunded to defendant, with interest thereon from January 11, 1932. In the complaint, which was filed November 9, 1933, these facts were alleged:

On March 12, 1929, the defendant filed his income tax return for the calendar year 1928, showing a taxable net income of $101,-747.75 and a tax liability of $16,129.49; a tax in that amount was duly assessed and on March 12, 1929, was paid by defendant. The principal items of taxable income received by defendant during the year 1928 consisted of one-half of the commissions on the sale of securities of the Kansas City, Mexico and Orient R. R. Co. amounting to $33,150.00 and one-half of the profits received from the sale of three hundred ninety-five shares of stock of the Orient R. R. Company, standing in the name of defendant's father, Charles H. Smyth, amounting to $67,722.75. Upon review of such income tax return by the Commissioner, it was held that the above amounts were not taxable to defendant but were income to Charles H. Smyth, and taxable to him and a deficiency assessment of such tax was made against Charles H. Smyth, in the amount of $29,-792.13 and an overassessment in favor of defendant in the amount of $16,129.49 was allowed. The amount of such overassessment with interest in the sum of $2297.83, a total of $18,427.32, was refunded to defendant on January 11, 1932. The admin-

istrative officers of the government erred in excluding the above amounts from defendant's taxable net income for 1928 and erroneously and illegally refunded to defendant $18,427.32. By an amendment filed January 2, 1934, it was further alleged that defendant was indebted to the United States in the sum of $18,427.32 with interest from January 11, 1932, as provided by statute, on account of such erroneous refund; that a demand had been made therefor; that a copy of such demand was attached to the complaint as an exhibit, and that no part thereof had been paid.

The exhibit attached to such amended complaint discloses that the demand on defendant was made on a Treasury Department form entitled "Notice and Demand for Income Tax" on December 14, 1933. In the body thereof appears the following:

| "Balance payable | Remarks. |
|---|---|
| $16,129.49 | 1928–March 1929–300461— |
| Interest allowed 2,297.83 | notice made per wire from |
| | Bureau dated 12/14/33 ac- |
| $18,427.32 | count erroneous refund" |

A demurrer interposed to such amended complaint was overruled. Defendant elected to stand thereon and judgment was entered for the government.

■ It is first contended by defendant that this is a suit to collect an income tax and since it was filed after the limitation period for the collection of taxes for the year 1928 had run, collection thereof is barred. This contention is based on the argument that a demand is an essential element of the cause of action; that the exhibit attached to the amended complaint shows a demand for income taxes and controls allegations of the complaint inconsistent therewith, and therefore the suit must be regarded as one for the collection of income taxes.

We do not find any substantial conflict between the exhibit and the allegations of the complaint. It is true that the demand was made on a form entitled "Notice and Demand for Income Tax" but the language appearing under "Remarks" clearly discloses that the amount demanded is on account of an erroneous refund.

■ It is next contended that, regardless of what might have constituted an erroneous refund prior to the enactment of the Revenue Act of 1928, from that time on erroneous refunds are limited to those that come within the definitions set out in section 608 thereof (45 Stat. 874), 26 U.S.C.A. § 1674 and note;[1] that the refund to defendant was made after the enactment of such act (May 29, 1928), was not within the definitions set out in section 608 and was therefore not recoverable. As supporting this construction it is urged that paragraph (a) of section 610 of the Revenue Act of 1928 (45 Stat. 875), 26 U.S.C.A. § 1646(a)[2] deals with erroneous refunds defined by section 608, supra, made after the enactment of the 1928 Act and paragraph (b) thereof (26 U.S.C.A. § 1646(b) deals with erroneous refunds made prior thereto.

[1] "Sec. 608. Effect of Expiration of Period of Limitation Against Taxpayer.

"A refund of any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) made after the enactment of this Act, shall be considered erroneous—

"(a) if made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or

"(b) in the case of a claim filed within the proper time and disallowed by the Commissioner after the enactment of this Act, if the refund was made after the expiration of the period of limitation for filing suit, unless—

"(1) within such period suit was begun by the taxpayer, or

"(2) within such period, the taxpayer and the Commissioner agreed in writing to suspend the running of the statute of limitations for filing suit from the date of the agreement to the date of final decision in one or more named cases then pending before the United States Board of Tax Appeals or the courts."

[2] "Sec. 610. Recovery of Amounts Erroneously Refunded.

"(a) Any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) refund of which is erroneously made, within the meaning of section 608, after the enactment of this Act, may be recovered by suit brought in the name of the United States, but only if such suit is begun within two years after the making of such refund.

"(b) Any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) which has been erroneously refunded (if such refund would not be considered as erroneous under section 608) may be recovered by suit brought in the name of the United States, but only if such suit is begun before the expiration of two years after the making of such refund or before May 1, 1928, whichever date is later."

In Stevens v. Nave-McCord Mercantile Company (C.C.A.8) 150 F. 71, 75, the court said:

"Cardinal rules for the construction of a statute are that the intention of the legislative body which enacted it should be ascertained and given effect, if possible, regardless of technical rules of construction and the dry words of the enactment; that that intention must be deduced not from a part but from the entire law; that the object which the enacting body sought to attain and the evil which it was endeavoring to remedy may always be considered for the purpose of ascertaining its intention; that the statute must be given a rational, sensible construction; and that, if this be consonant with its terms, it must have an interpretation which will advance the remedy and repress the wrong."

See, also, Darby-Lynde Co. v. Alexander (C.C.A. 10) 51 F.(2d) 56, 58.

Prior to the enactment of the Revenue Act of 1928, there was no time limit within which suits might be brought by the government to recover refunds alleged to have been erroneously made by its administrative officers. Recovery in such suits depended entirely upon the merits. Congress, by enacting section 608, supra, declared that all refunds made by administrative officers after certain specified periods of time had expired, were erroneous, regardless of the merits. Stated conversely, it amounted to a declaration by Congress that a taxpayer, regardless of the merits, was not entitled to a refund of income taxes paid, after the time for filing a claim had expired, or if a claim had been filed and rejected, after the time for filing suit had expired unless a waiver in writing had been executed to suspend the statute of limitations for the filing of suit for a specified period of time.

Refunds made prior to the running of the period of limitations for filing claim or suit therefor were not affected by section 608, supra. Recovery in such cases depended entirely upon whether the government could establish that such refunds were erroneous on the merits. Section 608 merely carved out those refunds made after the limitation period either for filing a claim or suit had run, and made them erroneous and recoverable as a matter of law.

Section 610(a), supra, imposed a limitation of two years on the government for the bringing of a suit to recover such refunds and section 610 (b), supra, imposed a limitation of two years on the government for the bringing of suit to recover all other refunds made by its administrative officers. This construction is confirmed by the legislative history of sections 608 and 610, supra. See House Report No. 2, 70th Congress, 1st Session, p. 33; House Conference Report No. 1882, 70th Congress, 1st Session, p. 22; Senate Report No. 960, 70th Congress, 1st Session, pp. 41–42.[3]

The construction contended for by defendant would lead to an absurd result. For example, unless a refund made after the enactment of the Revenue Act of 1928, was made after the limitation either for filing a claim or suit had run, the government would be powerless to recover such refund even though it was clearly erroneous on the merits. In construing a statute, such result is always to be avoided if possible. See Darby-Lynde Co. v. Alexander (C.C.A. 10) 51 F.(2d) 56, 58, 59.

The judgment entered herein awarded interest from the date of refund. The United States was entitled to interest only from the date of the demand, that is December 14, 1933. United States v. Carpenter (C.C.A.10) 84 F.(2d) 813. The judgment is modified accordingly and as modified,

Affirmed.

---

[3] The House Report above referred to in part reads:

"Sec. 610. Recovery of Amounts Erroneously Refunded.

"This section relates to the recovery of erroneous refunds as defined in section 608 and also to refunds which are erroneous independently of section 608. The section provides that any erroneous refund, of either class, may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund."

The Senate Report above referred to in part reads:

"Sec. 610. Recovery of Amounts Erroneously Refunded.

"This section relates to the recovery of erroneous refunds as defined in section 608 and also to refunds which are erroneous independently of section 608. The section provides that any erroneous refund, of either class, may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund. Obviously, if the limitation period on the making of assessments has not expired, the erroneous refund may be recovered by assessment in the ordinary manner."

904

On Petition for Rehearing.

 In our former opinion herein we allowed interest from the date of demand for payment of the erroneous refund following our decision in United States v. Carpenter (C.C.A.10) 84 F.(2d) 813. Section 803 (d) of the Revenue Act of 1936, 26 U.S.C.A.Supp. § 1646(d), was not called to our attention and we failed to note its provisions. Under it the United States was clearly entitled to recover interest from the date of the payment of the refund.

However, our decision was handed down July 1, 1937, and on August 2, 1937, a stipulation was entered into between Claude I. Depew, Esq., and W. E. Stanley, Esq., attorneys for appellant, and R. T. McCluggage, Assistant United States Attorney, and attorney of record for the United States in this court, reciting that neither party desired nor intended to file a petition for rehearing or an application to the Supreme Court of the United States for certiorari, and agreeing that the mandate might issue forthwith. The mandate duly issued and on August 12, 1937, was duly spread of record in the trial court pursuant to the order of that court. Immediately thereafter the appellant paid the judgment in accordance with the provisions of the mandate.

Thereafter, the appellee filed a motion to withdraw the stipulation and recall the mandate and for a rehearing.

It was the duty of the District Attorney to represent the United States in the action in the trial court. 28 U.S.C.A. § 485; McKay v. Rogers (C.C.A.10) 82 F.(2d) 795, 798. We must assume that he was duly authorized by the Attorney General to appear for the United States and manage the case in the Court of Appeals, 5 U.S.C.A. § 317; McKay v. Rogers, supra; United States v. Winston, 170 U.S. 522, 525, 18 S.Ct. 701, 42 L.Ed. 1130.

We conclude, therefore, that the United States is bound by the stipulation entered into by its attorney of record. Confiscation Cases, 7 Wall. 454, 456–458, 19 L.Ed. 196; Swift & Company v. United States, 276 U.S. 311, 331, 48 S.Ct. 311, 316, 72 L.Ed. 587. The Attorney General had the power to decline to file a petition for rehearing or an application for certiorari and to delegate that power to the Assistant District Attorney. United States v. Winston, supra; Pueblo of Picuris v. Abeyta (C.C.A.10) 50 F.(2d) 12, 13; 14; Mars v. McDougal (C. C.A.10) 40 F.(2d) 247, 249. The appellant has acted on the faith of that stipulation and paid the judgment. It is now too late for the United States to recede therefrom.

The petition for rehearing is therefore denied.