**UNITED STATES of America in its own right for and on Behalf of SANTA ANA INDIAN PUEBLO, Plaintiff-Appellant,**

v.

**UNIVERSITY OF NEW MEXICO, et al., Defendants-Appellees.**

No. 83–1238.

United States Court of Appeals, Tenth Circuit.

April 9, 1984.

Ellen J. Durkee, Atty., Dept. of Justice, Washington, D.C. (F. Henry Habicht, II, Acting Asst. Atty. Gen., Washington, D.C., William L. Lutz, U.S. Atty., Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., and David C. Shilton, Atty., Dept. of Justice, Washington, D.C., with her on the briefs), for plaintiff-appellant.

Douglas Seegmiller, Albuquerque, N.M. (Robert C. Poole, of Poole, Tinnin & Martin, Albuquerque, N.M., with him on the briefs), for defendant-appellee University of New Mexico.

Bruce Thompson, Asst. Atty. Gen., Santa Fe, N.M. (Paul Bardacke, Atty. Gen., and Reginald J. Storment, Asst. Atty. Gen., Santa Fe, N.M., on the brief) for defendants-appellees Museum of New Mexico and New Mexico State Parks and Recreation Division.

Scott E. Borg, Judy A. Flynn-O'Brien, and Richard W. Hughes, of Luebben, Hughes & Tomita, Albuquerque, N.M., filed an amicus curiae brief on behalf of Pueblo of Santa Ana.

Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The United States, in its own capacity and as trustee for the Indians of the Santa Ana Pueblo, sued the University of New Mexico, the Regents of the University of New Mexico, the Museum of New Mexico, and the New Mexico State Park and Recreation Commission under 28 U.S.C. § 1345. The United States sought ejectment of defendants from 11.8 acres of allegedly federally-protected tribal lands and damages for defendants' trespass.[1] The district court granted the Regents' motion to dismiss the claim for damages because of the immunity granted to the states by the Eleventh Amendment of the United States Constitution. It held that all of the defendants are instrumentalities of the State of New Mexico entitled to Eleventh Amendment immunity.[2] Relying upon *North Dakota v. Minnesota*, 263 U.S. 365, 44 S.Ct. 138, 68 L.Ed.2d 342 (1923),[3] the court found that the United States could not lend its name to an action which was essentially a private suit against an unconsenting state. It found that the United States did not have sufficient monetary interest to bring the suit in its own right. After the court dismissed the other claims in the suit without prejudice pursuant to the parties' stipulation, the United States appealed. The only issue before us is whether the Eleventh Amendment bars the United States from

---

1. The Pueblo of Santa Ana is a tribal entity for which the United States Bureau of Indian Affairs recognizes trust responsibility. 46 Fed. Reg. 35360, 35362. Although the Pueblo of Santa Ana allegedly owns the land at issue in this case in fee simple, it is subject to the restrictions on alienation imposed by the Indian Nonintercourse Act, 25 U.S.C. § 177, made applicable to Pueblo lands by the Act of February 27, 1851, 9 Stat. 587. *See United States v. Candelaria*, 271 U.S. 432, 442, 46 S.Ct. 561, 563, 70 L.Ed. 1023 (1926); *Alonzo v. United States*, 249 F.2d 189, 196 (10th Cir.1957), *cert. denied*, 355 U.S. 940, 78 S.Ct. 429, 2 L.Ed.2d 421 (1958). The United States alleges that sometime after 1935 the University and the other defendants physically invaded approximately 11.8 acres of land owned by the Pueblo without permission. The defendants deny the Pueblo's claimed ownership of the land, and they deny that any actionable physical invasion has ever occurred.

2. On appeal no party disputes the correctness of the district court finding that the defendants are instrumentalities of the state that may assert Eleventh Amendment immunity.

3. In *North Dakota v. Minnesota*, the Supreme Court recognized that a state had a sufficient interest in the health and prosperity of its citizens to bring suit against another state to enjoin the flooding of its own citizens' farmlands, but concluded that the Eleventh Amendment barred a claim for damages made on behalf of individual citizens. The Court held that the individual citizens were the real parties in interest with regard to the claim for damages because it was inconceivable that the state was "prosecuting this damage feature of its suit without intending to pay over what it thus recovers to those entitled." 263 U.S. at 375, 44 S.Ct. at 140.

bringing this action for recovery of damages.

■ The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment bars suits against a state brought by citizens of another state, of a foreign country, and of the state being sued, *see Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), but it does not bar suits against a state by the United States. *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15, 13 L.Ed.2d 717 (1965).

We believe *United States v. Minnesota*, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed.2d 539 (1926), controls this case. There the United States brought a suit against the State of Minnesota to cancel patents to lands issued to the state or, if the state had sold the lands, to recover their value. The United States asserted that the patents had been issued in violation of treaties under which the United States "became obligated to apply the lands and the proceeds of their sale exclusively to the use, support and civilization of the Chippewas." *Id.* at 192, 46 S.Ct. at 300. Accordingly, in its prayer for relief the United States requested that the Court order "that the lands—or, where any have been sold, their value in their stead—be restored to the control of the United States," and that it decree "that the lands and moneys are to be held, administered and disposed of by the United States" in accordance with its treaty obligations to the Chippewa tribe. *Id.* at 194, 46 S.Ct. at 300. Minnesota argued that the suit essentially was one brought by the Indians against the state and therefore was not within the jurisdiction of the Court; it claimed that the tribe was the real party in interest as the sole beneficiary of any recovery and that the United States was only a nominal party—"a mere conduit through which the Indians are asserting their private rights." *Id.* at 193, 46 S.Ct. at 300. The Court held that the United States had a direct interest in the Chippewa land controversy based on the United States' duty to aid and protect the Indians. The Court noted that the interest of the United States arose "out of its guardianship over the Indians and out of its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations; and in both aspects the interest is one which is vested in it as a sovereign." *Id.* at 194, 46 S.Ct. at 301. The Court rejected the argument that because the tribe could not sue the state the United States had no duty or right to sue. *Id.* at 194–95, 46 S.Ct. at 300–01.

> "[I]mmunity from suit is not based on and does not reflect an absence of duty. So the fact that the Indians could not sue the United States for a failure to demand that the State surrender the lands or their value does not show that the United States owes no duty to the Indians in that regard. Neither does the fact that they could not sue the State show that the United States is without right to sue her for their benefit. But it does make for and emphasize the duty, and therefore the right, of the United States to sue."

*Id.* at 195, 46 S.Ct. at 301.

■ In the case before us, the district court first attempted to distinguish *Minnesota* on the basis that the damage award would ultimately benefit the Pueblos. But in *Minnesota* the Court permitted an award of monetary damages for the Chippewa lands that Minnesota had sold and that could not be restored to the United States by cancelling the patents. In *Minnesota*, the award would have been paid out of the state treasury and would ultimately benefit the tribe. Because the United States acted under its fiduciary obligation in bringing this trespass claim, it does not matter that the ultimate beneficiary may be the Pueblos. 270 U.S. at 193–95, 46 S.Ct. at 300–01.

■ The district court also attempted to distinguish *Minnesota* on the ground that the relationship of the United States to the Pueblos was different from its relationship to the Chippewas because the United States had specific treaty obligations to the Chippewas. That is a distinction without a difference. Congress has "pervasive authority, rooted in the Constitution, to control [Indian] tribal property." *Delaware Tribal Business Committee v. Weeks*, 430 U.S. 73, 83, 97 S.Ct. 911, 918, 51 L.Ed.2d 173 (1977). This authority is "one of the most fundamental expressions, if not the major expression, of the constitutional power of Congress over Indian affairs." *Id.* at 86, 97 S.Ct. at 919. The Indian Nonintercourse Act, 25 U.S.C. § 177, has been perhaps the most significant congressional enactment regarding Indian lands. The Act's overriding purpose is the protection of Indian lands. *See United States v. Southern Pacific Transportation Co.*, 543 F.2d 676, 698 (9th Cir.1976). It acknowledges and guarantees the Indian tribes' right of possession, *United States v. Santa Fe Pacific Railroad*, 314 U.S. 339, 348, 62 S.Ct. 248, 252, 86 L.Ed. 260 (1941), and imposes on the federal government a fiduciary duty to protect the lands covered by the Act. *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 379 (1st Cir.1975).

Congress extended the Nonintercourse Act to the Pueblos in 1851. Act of February 27, 1851, ch. 14, § 7, 9 Stat. 587. In the New Mexico Enabling Act, Congress declared that the lands of the Pueblo Indians "shall be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States." Ch. 310, § 2, 36 Stat. 557, 559 (1910). The Pueblo Lands Act of 1924 required that the United States, "in its sovereign capacity as guardian of said Pueblo Indians," file suits on their behalf to quiet title to their lands. Ch. 331, § 1, 43 Stat. 636. Section 17 of the Pueblo Lands Act reaffirmed that the Pueblos and their lands were fully under the guardianship of Congress and the protection of the Nonintercourse Act. *Id.* at 641–42.

■ The Supreme Court also recognized that Congress has assumed sufficient control over Pueblo lands to create a strong fiduciary duty in the United States. As the Court stated in *United States v. Chavez*, 290 U.S. 357, 362, 54 S.Ct. 217, 219, 78 L.Ed. 360 (1933),

"[T]he status of the Indians of the several Pueblos in New Mexico is that of dependent Indian tribes under the guardianship of the United States and that by reason of this status they and their lands are subject to the legislation of Congress enacted for the protection of tribal Indians and their property."

And in *United States v. Sandoval*, 231 U.S. 28, 47, 34 S.Ct. 1, 6, 58 L.Ed. 107 (1913), which held that Congress could validly prohibit the sale of intoxicating liquors to the Pueblos, the Court reasoned,

"[T]he legislative and executive branches of the government have regarded and treated the Pueblos of New Mexico as dependent communities entitled to its aid and protection, like other Indian tribes, and, considering their Indian lineage, isolated and communal life, primitive customs and limited civilization, this assertion of guardianship over them cannot be said to be arbitrary, but must be regarded as both authorized and controlling."

The trial court indicated that the United States' obligation to the Pueblos is diminished because the Pueblos own their property in fee simple. However, in *United States v. Candelaria*, 271 U.S. 432, 440–44, 46 S.Ct. 561, 562–63, 70 L.Ed. 1023 (1926), the Court expressly rejected the argument that the Pueblos' fee simple ownership impaired the guardianship duty or power of the United States. This Court also has recognized that the Pueblos are entitled to the same protection as other tribes regardless of their fee simple title, and "the intent of Congress to provide such protection cannot be doubted." *Plains Electric Generation & Transmission Cooperative, Inc. v. Pueblo of Laguna*, 542 F.2d 1375, 1381 (10th Cir.1976); *accord New Mexico v. Aamodt*, 537 F.2d 1102, 1111 (10th Cir.

1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). Thus, we find no reasonable basis to distinguish the United States' duty to the Chippewas in *Minnesota* and its duty to the Pueblos in this case.

REVERSED AND REMANDED for further proceedings consistent with this opinion.