**GOLDEN HILL PAUGUSSETT TRIBE OF INDIANS, Plaintiff,**

v.

**M. Jodie RELL, Governor of the State of Connecticut, et al., Defendants.**

No. 2:92cv738 (JBA).

United States District Court, D. Connecticut.

Nov. 29, 2006.

ministration Dept., Henry C. Winiarski, Jr., Gerald L. Garlick, Linda Clifford Hadley, Krasow, Garlick & Hadley, Hartford, CT, Mark T. Anastasi, City of Bridgeport Office of the City Attorney, Anthony M. Feeherry, Mark S. Puzella, Michael K. Murray, Goodwin Procter LLP, Boston, MA, Richard L. Albrecht, Austin K. Wolf, Cohen & Wolf, P.C., Janet L. Janczewski, The Southern Connecticut Gas Co., Gerald T. Weiner, Judith A. Mauzaka, Roberta Napolitano Weinstein, Weiner, Ignal, Vogel & Shapiro, Bridgeport, CT, Jeffrey R. Babbin, Noel E. Hanf, Wiggin & Dana, Geoffrey A. Hecht, Caplan Hecht Scanlon & Mendel, Stuart A. Margolis, Michael Stanton Hillis, Dombroski, Knapsack & Hillis, Kenneth M. Rozich, Law Firm of Edward D. Jacobs, New Haven, CT, John J. Kelly, Jr., Cantor, Floman, Gross, Kelly, Amendola & Sacramone, Orange, CT, Richard J. Buturla, Robert L. Berchem, Warren L. Holcomb, Berchem, Moses & Devlin, P.C., Milford, CT, Paul Ruszczyk, Cheshire, CT, Howard R. Wolfe, Goldman Gruder & Woods, Greenwich, CT, Carolyn W. Kaas, James A. Trowbridge, Quinnipiac College, Law School Clinic, Hamden, CT, for Defendants.

## RULING ON PENDING MOTIONS FOR JUDGMENT ON THE PLEADINGS [DOCS. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362, 364, 381]

ARTERTON, District Judge.

This case is the consolidated action composed of three separate land actions brought by plaintiff, Golden Hill Paugussett Tribe of Indians ("Golden Hill"), against various individuals, corporations, and the State of Connecticut. Plaintiff seeks to "restore the Golden Hill Paugussett Tribe of Indians to possession of certain aboriginal and reservation lands in Bridgeport, Connecticut, which lands are

Bernard Wishnia, Roseland, NJ, Michael D. O'Connell, O'Connell, Flaherty & Attmore, Hartford, CT, William A. Wechsler, Bailey & Wechsler, Hebron, CT, for Plaintiff.

Daniel R. Schaefer, David G. Chabot, Attorney General's Office, Special Litigation, Mark F. Kohler, Susan Quinn Cobb, Attorney General's Office, Richard Blumenthal, Attorney General's Office, Ad-

subject to the Indian Non–Intercourse Act, 25 U.S.C. § 177, and which lands were taken in violation of the common law." Am. Compl. [Doc. # 325] ¶ 1. Plaintiff also seeks money damages stemming from the alleged denial of the use and enjoyment of any rental income and profits due to it from the land and the fair market value thereof.[1] *Id.* ¶¶ 161, 162.

Pursuant to order of the Second Circuit, *Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51 (2d Cir.1994), this case was stayed pursuant to the doctrine of primary jurisdiction pending resolution by the Bureau of Indian Affairs (the "BIA") of Golden Hill's petition for federal tribal acknowledgment. The BIA's proceedings concluded with the rejection of Golden Hill's petition and defendants now move pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, contending that the Court should defer and/or give preclusive effect to various factual determinations made by the BIA, which would preclude Golden Hill from satisfying the elements of its Nonintercourse Act claim, or, alternatively, for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) based on the equitable doctrines of laches, long acquiescence, and impossibility. *See* [Docs. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362, 364, 381].[2]

For the reasons that follow, defendants' Rule 12(c) motions will be granted.

## I. Factual and Procedural Background

Golden Hill alleges that it "is an Indian Tribe which has resided in the State of Connecticut since time immemorial. The Tribe is recognized by the State of Con-

necticut and has two reservations in the State of Connecticut located in Trumbull and Colchester." Am. Compl. ¶ 4. Plaintiff claims that "[s]ince time immemorial, and until the acts complained of [in this action], the Tribe exclusively owned, used, and occupied lands in what is now known as the City of Bridgeport, Connecticut, including the lands which are the subject of this litigation." *Id.* ¶ 12.

Plaintiff alleges a series of illegal encroachments by which the Tribe was divested of portions of its property. *Id.* ¶¶ 15–25. As articulated by plaintiff, "[t]he Non–Intercourse Act confirmed the rights of Indian Tribes to the possession of all lands then owned or occupied by them, until alienated with the consent of the Congress, and nullified any purported conveyance of tribal lands made without such federal consent." *Id.* ¶ 22. Plaintiff alleges that "[t]he government of the United States has never consented to or approved of the said enactment of the General Assembly of the State of Connecticut or the Assembly of the Colony of Connecticut [purporting to alienate certain alleged tribal property], or the acts of any other persons, or any conveyance or alienation pursuant thereto, and the said acts, enactments, and conveyances are void; nor has the title and right of possession of the Tribe to the said land been transferred to any defendant or to any other party with the consent of . . . or approval of the Government of the United States. The Tribe therefore retains the title and right of possession to the said land and the said land is not and never has been the proper-

---

1. The claims originally brought under the Proclamation of 1763 were previously dismissed by this Court. *See* Pl. Opp. [Doc. # 370] at 3 n. 3.

2. While the majority of defendants have filed motions joining the State's briefing of the

issues, defendants United Illuminating Company and Southern Connecticut Gas Company, defendants Joseph E. Shapiro and Marjorie Shapiro, and defendant Hoffman Fuel Company have filed their own briefing. *See* [Docs. ## 363, 365, 376].

ty of any other person, party or entity." *Id.* ¶ 26. Plaintiff accordingly seeks a declaration that it is "the owner of and [has] the legal and equitable title and right of possession to such land, and restor[ation] to immediate possession," as well as, *inter alia,* money damages representing the fair market value of the land and the fair rental value and profits of the land for the period of dispossession. *Id.* at 45 (prayer for relief).

■ In order "[t]o establish a *prima facie* case based on a violation of the [Nonintercourse] Act, a plaintiff must show that (1) it is an Indian tribe, (2) the land is tribal land, (3) the United States has never consented to or approved the alienation of this tribal land, and (4) the trust relationship between the United States and the tribe has not been terminated or abandoned." *Golden Hill,* 39 F.3d at 56. "Federal courts have held that to prove tribal status under the Nonintercourse Act, an Indian group must show that it is 'a body of Indians of the same or a similar race', united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory." *Id.* at 59 (citing *United States v. Candelaria,* 271 U.S. 432, 442, 46 S.Ct. 561, 70 L.Ed. 1023 (1926); *Montoya v. United States,* 180 U.S. 261, 266, 36 Ct.Cl. 577, 21 S.Ct. 358, 45 L.Ed. 521 (1901)).

In 1992 to 1993, after plaintiff filed an amended complaint and the parties briefed motions to dismiss, this Court (by opinion of Hon. Peter C. Dorsey) dismissed plaintiff's Nonintercourse Act claim, finding that Golden Hill had failed to exhaust administrative procedures for tribal recognition prior to seeking a judicial determination of tribal status, and exercised its discretion to defer in the first instance to federal acknowledgment proceedings before the BIA. *See Golden Hill*

*Paugussett Tribe of Indians v. Weicker,* 839 F.Supp. 130 (D.Conn.1993).

On appeal, the Second Circuit found that "[n]either lack of standing [n]or failure to exhaust administrative remedies provides good grounds for the district court's dismissal of plaintiff's suit," noting that "tribal status for purposes of obtaining federal benefits is not necessarily the same as tribal status under the Nonintercourse Act [and] that tribal status for purposes of the Act relates both to standing to sue under the Act and to the merits of a claim under the Act. The two issues are distinct, though they overlap to a considerable extent." *See Golden Hill,* 39 F.3d at 59–61. The Second Circuit observed that "Golden Hill alleged that it is an Indian tribe" and thus "the plaintiff tribe ha[d] pled in each of its three complaints all of the elements of a Nonintercourse Act claim," but found that "deferral [in the first instance to the BIA] [wa]s fully warranted ... where the plaintiff ha[d] already invoked the BIA's authority." *Id.* at 57–58, 60. While the Second Circuit observed that "[r]egardless of whether the BIA were to acknowledge Golden Hill as a tribe for purposes of federal benefits, Golden Hill must still turn to the district court for an ultimate judicial determination of its claim under the Nonintercourse Act," the court relied on the doctrine of primary jurisdiction in holding that "the BIA is better qualified by virtue of its knowledge and experience to determine at the outset whether Golden Hill meets the criteria for tribal status" and that "[t]he BIA's resolution of these factual issues regarding tribal status will be of considerable assistance to the district court in ultimately deciding Golden Hill's Nonintercourse Act claims." *Id.* 58–60. The court noted that "[a] federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshaling them into a meaningful pat-

tern." *Id.* at 60 (citing *Fed. Maritime Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 498, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958)). Accordingly, the Second Circuit remanded the case to the district court "with directions to stay the proceedings ... pending the BIA's consideration of Golden Hill's claim for tribal recognition, the duration and termination of the stay to be determined in accordance with this opinion." *Id.* at 61.

On June 14, 2004, the BIA issued its Final Determination, rejecting plaintiff's petition for federal tribal acknowledgment, of which decision the defendant State provided notice to the Court. *See* Notification [Doc. # 281]. As noted by the State, under the acknowledgment regulations the Final Determination would become final and effective 90 days from publication in the Federal Register unless a request for reconsideration was filed. *See* 25 C.F.R. § 83.11. The relevant findings of the BIA included that the 25 C.F.R. § 83.7(b) requirement of a distinct tribal community from historical times to the present had not been satisfied after 1823, *see* Final Determination [Doc. # 331, Ex. A] at 91–92, that the § 83.7(c) requirement of political influence or authority over tribal members from historical times to the present had not been satisfied after 1802, *id.* at 102–03, and that the § 83.7(e) requirement that the purported tribe descended from a historical tribe had also not been satisfied, *id.* at 128–29.

On September 6, 2004, plaintiff filed a request for reconsideration. *See* Status Report [Doc. # 286]. Accordingly, on December 23, 2004, the Court administratively closed this case pending final determination by the Interior Board of Indian Appeals (the "IBIA"). *See* Order of Dismissal [Doc. # 291]. On May 17, 2005, Golden Hill moved to reopen the case, stating that its motion was made within 60 days "following action by the United

States Department of the Interior, on the plaintiff's petition for acknowledgment," Mot. to Restore [Doc. # 292], which motion the Court granted. Thereafter, plaintiff filed the current Amended Complaint [Doc. # 325] and briefing on the instant motions ensued.

## II. Standard

■ "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The "standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) (citations omitted). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Id.* (citations omitted). The Court's consideration may include "any written instrument attached to [the complaint] as an exhibit, ... materials incorporated in it by reference, ... and documents that, although not incorporated by reference, are 'integral' to the complaint," and any matters that are subject to judicial notice. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

## III. Discussion

Defendants contend that the Court should take judicial notice of the BIA's

factual findings in its Final Decision rejecting plaintiff's petition for federal tribal acknowledgment and defer to and/or give collateral estoppel effect to those findings, which defendants argue would result in a finding that plaintiff's Nonintercourse Act cannot succeed because plaintiff cannot satisfy the component of that claim requiring plaintiff to establish that it is "an Indian tribe," *see Seneca Nation of Indians v. N.Y.,* 382 F.3d 245, 258 (2d Cir. 2004).

### A. Judicial Notice

 As a general rule "[j]udicial notice may be taken of public filings." *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir.2003). "Among the matters of which courts may take judicial notice are decisions of an administrative agency." *Reynolds v. Blumenthal,* 04cv218 (PCD), 2006 WL 2788380, at *3 n. 7 (D.Conn. Sept. 26, 2006) (citing *Furnari v. Warden,* 218 F.3d 250, 255 (3d Cir.2000)) ("[I]t is proper for this Court to take judicial notice of decisions of an administrative agency."); *Opoka v. INS,* 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice.").

 Thus, the Court takes judicial notice of the BIA's Final Determination, including its factual findings therein, thus bringing the Final Determination (including the factual findings) within the scope of materials that can be considered on a Rule 12(c) motion. The issue thus becomes whether the Court should defer to the BIA's factual findings, whether those findings should be given collateral estoppel effect in this action and, if so, whether those findings preclude plaintiff's Nonintercourse Act claim due to inability to demonstrate tribal status.

### B. Deference Under Primary Jurisdiction Doctrine

Defendants contend that the Court should grant deference to the BIA's factual determinations and it is obvious that some amount of deference or other effect would need to be granted a determination made by an agency to which a court initially deferred under the doctrine of primary jurisdiction, otherwise the doctrine would be meaningless. After all, "[t]he primary jurisdiction doctrine serves two interests: consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims." *Golden Hill,* 39 F.3d at 59. These interests would not be served if the agency's determination did not carry some weight once adjudication of the case in federal court was reopened.

However, the guidance provided to district courts on the degree or nature of the deference due such an agency determination is somewhat elusive. For example, as the Second Circuit noted on appeal in this case, "[a] federal court, of course, retains final authority to rule on a federal statute, *but should avail itself of the agency's aid in gathering facts and marshaling them into a meaningful pattern,*" observing that "the BIA is better qualified by virtue of his knowledge and experience to determine at the outset whether Golden Hill meets the criteria for tribal status" and "[t]he BIA's resolution of these factual issues regarding tribal status *will be of considerable assistance* to the district court in ultimately deciding Golden Hill's Nonintercourse Act claims." *Golden Hill,* 39 F.3d at 60 (emphasis added). Other explanations offered by the United States Supreme Court and the Second Circuit are similarly vague.

*See, e.g., Ricci v. Chicago Mercantile Exch.,* 409 U.S. 289, 305–06, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973) (noting that the matters at issue were those "typically lying at the heart of an administrative agency's task and ... appear to be matters that Congress has placed within the jurisdiction of the Commodity Exchange Commission. We should recognize that courts, while retaining the final authority to expound the statute, *should avail themselves of the aid* implicit in the agency's superiority in gathering the relevant facts and in marshaling them into a meaningful pattern") (emphasis added); *United States v. W. Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (in the case of application of primary jurisdiction, "the judicial process is suspended pending referral of such issues to the administrative body *for its views*") (emphasis added); *Ellis v. Tribune Tel. Co.,* 443 F.3d 71, 81 (2d Cir.2006) ("The [primary jurisdiction] doctrine's central aim is to *allocate initial decisionmaking responsibility* between courts and agencies and to ensure that they do not work at cross-purposes.") (emphasis added); *Tassy v. Brunswick Hosp. Ctr., Inc.,* 296 F.3d 65, 68 (2d Cir.2002) ("Since the inception of the [primary jurisdiction] doctrine, courts have resisted creating any fixed rules or formulas for its application.").

The most concrete direction is found in the decisions in *Ricci* and *Tassy,* which suggest that factual determinations made by an agency operating under the primary jurisdiction doctrine should not be relitigated in federal court. *See Ricci,* 409 U.S. at 306, 93 S.Ct. 573 ("The adjudication of

the Commission ... would obviate the necessity for the antitrust court to relitigate the issues actually disposed of by the agency decision"); *Tassy,* 296 F.3d at 68 (discussing the primary jurisdiction "principle ... that in cases raising issues of facts not within the conventional expertise of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though *the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined*") (emphasis added).

These statements suggest that this Court should accord some amount of deference to the factual findings made by the BIA. Indeed, as noted above, if such effect were not afforded to the BIA's findings, the purposes of primary jurisdiction would not be served. However, because, as described below, application of collateral estoppel to the BIA's findings renders the same outcome, the Court need not define the boundaries or degree of this deference.[3]

### C. Collateral Estoppel

■ Apart from the issue of the degree or nature of deference due a factual determination by an agency to which a court initially deferred under the doctrine of primary jurisdiction, the BIA's factual findings are also entitled to collateral estoppel effect in this proceeding.

■ "We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata

---

**3.** The Court notes, as defendants do, that Golden Hill could have challenged the BIA's findings by seeking review under the Administrative Procedure Act, but it has chosen not to do so. *Cf. Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 72, 91 S.Ct. 203, 27 L.Ed.2d 203

(1970) (noting "[defendant] cannot force collateral redetermination of the same issue [decided by the Federal Maritime Commission] in a different and inappropriate forum," observing that defendant chose not to seek APA review of Federal Maritime Commission's order).

(as to claims) to those determinations of administrative bodies that have attained finality. 'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.'" *Astoria Fed. Savings & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). In order for collateral estoppel to apply to an adjudicative determination, "First, the issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding. Issues of fact may bear the same label without being identical. They are not identical if the legal standards governing their resolution are significantly different.... Further, even if the issues in the two proceedings are identical, a decision by an administrative agency cannot be the basis for collateral estoppel unless it was an adjudicative decision. An agency action granting or denying a privilege is not an adjudicative decision unless the agency has made its decision using procedures substantially similar to those employed by the courts." *Metromedia v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992), *abrogated on other grounds as recognized by Yung v. Lee,* 432 F.3d 142, 147–48 (2d Cir.2005).

In determining whether an agency action constitutes an "adjudicative" or "judicial" decision, the Second Circuit has considered the factors set out in the Restatement (Second) of Judgments § 83(2). *See Delamater v. Schweiker,* 721 F.2d 50, 53–54 (2d Cir.1983). Section 83(2) provides that:

> An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including: (a) Adequate notice to persons who are to be bound by the adjudication, ... (b) The right on behalf of party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties; (c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specified transaction, situation, or status, or a specific series thereof; (d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and (e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Plaintiff does not dispute that the BIA's Final Determination is now a final decision, as is necessary for application of collateral estoppel, nor does plaintiff contest defendants' description of the BIA processes and procedures provided, resulting in a full and fair opportunity to litigate. Such procedures include: the filing of a letter of intent by the petitioning group (plaintiff), followed by submission of a petition with evidence to demonstrate that the group satisfies the seven tribal acknowledgment criteria, *see* 25 C.F.R. §§ 83.4, 83.6; preliminary review by the BIA of the petition evidence and provision of assistance to petitioner in supplementing and/or revising its petition, *id.* § 83.10(a)-(b); issuance of a BIA "letter of obvious deficiencies," identifying deficiencies and allowing

petitioner to supplement and/or revise its petition accordingly, *id.* § 83.10(b); placing the petition on "active consideration," *id.* § 83.10(f), after which the BIA issues a proposed finding and the petitioner and other interested parties are given the opportunity to submit arguments and evidence to rebut or support the proposed findings, *id.* § 83.10(g), (i), (j), including a petitioner reply to any submissions by interested parties, *id.* § 83.10(k); issuance of a final determination by the BIA, *id.* § 83.10(m), of which petitioner may seek independent review and reconsideration with the IBIA, including a hearing before an administrative law judge on disputed issues of fact, and may also seek review from the Secretary of the Interior, *id.* § 83.11; and judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, after exhaustion of administrative remedies.

Plaintiff does not dispute the availability of the above protections and procedures, nor that it availed itself of these procedures during the pendency of its petition before the BIA. Indeed, review of the Final Determination illustrates that the regulatory procedural framework was followed in this case—with petitioner filing a letter of intent followed by a petition, the BIA providing notice of its Preliminary Finding, and petitioner having the opportunity to request reconsideration and also to submit comments and arguments before issuance of the Final Determination. Plaintiff details examples of "prejudicial conduct" which it contends infected the

BIA's ultimate decision, *see* Pl. Opp. at 13, which arguments could be advanced in an APA judicial review context, but do not support any claim that petitioner was not afforded a full and fair opportunity to litigate before the BIA. Indeed, plaintiff does not appear to contest that it had such an opportunity before the BIA.[4]

Thus, the Court must next consider whether the BIA's Final Determination constituted an "adjudicative" determination, by applying the Section 83(2) factors. The procedures set out by the BIA regulations provide for notice, presentation of evidence and arguments (including the opportunity to revise and supplement), as well as the opportunity to respond to the evidence and arguments of other interested parties and the proposed finding of the BIA, the clear application of seven mandatory criteria for federal tribal acknowledgment (which the BIA's Final Determination reflects), and rules of finality, including procedures for internal reconsideration and review, as well as judicial review under the APA. Thus, the Court concludes that the BIA's Final Determination was an "adjudicative" one, sufficient for application of the collateral estoppel doctrine.[5]

### D. Tribal Status

Plaintiff's reliance on the Second Circuit's observation that the criteria for federal tribal acknowledgment and the requirements for existence as a "tribe" for recovery under the Nonintercourse Act

---

**4.** Plaintiff's suggestion that it is entitled to additional discovery is inapposite as it does not claim that it was denied adequate discovery in the BIA proceeding such that its ability to fully and fairly litigate was limited.

**5.** Even though plaintiff does not contend that collateral estoppel cannot be invoked here because it would be deprived of its right to a jury trial on those factual issues determined

by the BIA, the comment to Restatement Section 27 shows such an argument to lack viability: "[t]he determination of an issue by a judge in a proceeding conducted without a jury is conclusive in a subsequent action whether or not there would have been a right to a jury in that subsequent action if collateral estoppel did not apply." Restatement 2d Judgments § 27 cmt. d.

are distinct misses the mark because, while accurate, it does not undermine application of deference and/or collateral estoppel to those factual determinations made by the BIA which are relevant to the assessment of plaintiff's Nonintercourse Act claim in this court. Indeed, the Second Circuit also observed that "[t]he *Montoya/Candelaria* definition and the BIA criteria both have anthropological, political, geographical and cultural bases and require, at a minimum, a community with a political structure. The two standards overlap, though their application might not always yield identical results." *Golden Hill*, 39 F.3d at 59.

Giving collateral estoppel effect to the factual findings of the BIA in its Final Determination, as upheld by subsequent administrative review, the Court considers whether those findings dictate a conclusion that plaintiff cannot demonstrate that it is an "Indian tribe," as defined in *Montoya* and its progeny, thus precluding recovery under the Nonintercourse Act.

■ As noted above, in order to demonstrate tribal status for purposes of the Nonintercourse Act, *Montoya* and its progeny require that "an Indian Group must show that it is 'a body of Indians of the same or similar race', united in a community under one leadership or government, and inhabiting a particular though sometimes ill-defined territory." *Golden Hill*, 39 F.3d at 59 (citing *Candelaria*, 271 U.S. at 442, 46 S.Ct. 561; *Montoya*, 180 U.S. at 266, 21 S.Ct. 358). The BIA's factual findings preclude plaintiff's satisfaction of all of these criteria. Specifically, the BIA concluded that Golden Hill had not existed as a "distinct tribal community" after 1823, Final Decision at 91–92, that there was no evidence of "political influence or authority over tribal members" after 1802, and in fact that "two of the three named and documented Turkey Hill descendants stated in 1910 that the Turkey Hill tribe had long since ceased to exist as a political entity and made no mention of the Golden Hill descendants," *id.* at 102–03. Giving collateral estoppel to these findings, they preclude Golden Hill from demonstrating in this action that it is a group "united ·in a community under one leadership or government." As this is a component of tribal status under *Montoya* and its progeny, and as tribal status is one element of a *prima facie* case under the Nonintercourse Act, these findings preclude recovery by Golden Hill under the Nonintercourse Act as a matter of law.[6]

## IV. Conclusion

For the foregoing reasons, defendants' Rule 12(c) motions [Docs. ## 330, 333, 334, 335, 339, 342, 346, 347, 350, 357, 362,

---

6. *N.Y. v. Shinnecock Indian Nation*, 400 F.Supp.2d 486 (E.D.N.Y.2005), cited by both sides, does not alter this conclusion. First, collateral estoppel by BIA findings was not an issue in that case as the BIA federal acknowledgment proceeding had not yet concluded. *Id.* at 493. Moreover, the *Shinnecock* court found that (contrary to the BIA's findings here) the purported tribe "functioned under a political leadership for more than 200 years, having met as a tribe to elect tribal leaders in every year from 1792 through 2004" and that "the Shinnecock Indian Nation is united in a community under one leadership or govern-

ment." *Id.* at 490. Thus, although the *Shinnecock* court also observed that "[t]he Shinnecock Nation is, and has been, recognized as an Indian tribe by the State of New York for more than 200 years," *id.* at 487, and plaintiff in this case is recognized by the State of Connecticut as an "indigenous tribe," *see* Conn. Gen.Stat. § 49–57a(b), such fact was not the exclusive or determinative factor in *Shinnecock*, nor should it be here. *See also* Conn. Gen.Stat. § 47–66h(b) ("Nothing in this chapter shall be construed to confer tribal status under federal law on the indigenous tribes named in section 47–59a.").

364, 381] are GRANTED.[7] The Clerk is directed to close this case.

IT IS SO ORDERED.

---

7. Because the Court concludes that Golden Hill cannot satisfy the tribal status component of a Nonintercourse Act claim as a matter of law, it does not reach defendants' arguments under Rule 12(b)(6) regarding equitable defenses.