**UNITED STATES of America,
Plaintiff,**

v.

**43.47 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF LITCHFIELD, TOWN OF KENT, et al., Defendants.**

**Schaghticoke Tribal Nation, Plaintiff,**

v.

**Kent School, et al., Defendants.**

**Schaghticoke Tribal Nation, Plaintiff,**

v.

**United States Of America,
et al., Defendants.**

Civil Nos. 2:85–cv–01078 (AWT), 3:98–cv–01113 (AWT), 3:00–cv–00820 (AWT).

United States District Court, D. Connecticut.

Sept. 30, 2012.

---

John B. Hughes, U.S. Attorney's Office, New Haven, Harles D. Ray, David A. Reif, Robert J. Gallo, II, William H. Bright, Jr., Eric Watt Wiechmann, McCarter & English, Eric L. Sussman, Day, Berry & Howard, Hartford, Karen L. Wagshul, Cummings & Lockwood, Stamford, CT, Kristina Hendrickson Allaire, Mirick O'Connell, Demallie & Lougee, Worcester, MA, for Plaintiffs.

Charles D. Ray, Eric Watt Wiechmann, McCarter & English, James R. Fogarty, Leland C. Selby, Fogarty, Cohen, Selby & Nemiroff, Greenwich, Allan B. Taylor, David J. Elliott, Eric L. Sussman, Day, Berry & Howard, Hartford, Karen L. Wagshul, Cummings & Lockwood, Stamford, Jeffrey B. Sienkiewicz, Michael S. McKenna, Sienkiewicz, McKenna & Sienkiewicz, New Milford, CT, Kristina Hendrickson Allaire, Mirick, O'Connell, Demallie & Lougee, Worcester, MA, for Defendants.

### RULING ON MOTIONS FOR JUDGMENT ON THE PLEADINGS

ALVIN W. THOMPSON, District Judge.

This is a consolidated action composed of three cases: *United States v. 43.47*

*Acres of Land, et al.,* Docket 2:85–cv–1078 (AWT) ("*USA v. 43.47 Acres*"); *Schaghticoke Tribal Nation v. Kent School Corporation, Inc., et al.,* Docket 3:98–cv–1113(AWT) ("*STN v. Kent School*"); and *Schaghticoke Tribal Nation v. United States, et al.,* Docket 3:00–cv–820 (AWT) ("*STN v. USA*"). A common claim made by the Schaghticoke Tribal Nation (the "STN") in each case is that the STN is an Indian tribe that has been dispossessed of Indian land without the approval of Congress in violation of the Indian Nonintercourse Act, 25 U.S.C. § 177 (the "Nonintercourse Act").

The United States and the land claim defendants, i.e., Kent School Corporation, Inc. ("Kent School"), the Town of Kent and Connecticut Light and Power Company ("CL & P"), move for judgment on the pleadings in the consolidated case. They argue that the STN is collaterally estopped from litigating the issue of whether the STN is an Indian tribe due to a determination by the Bureau of Indian Affairs ("BIA") that the STN is not an Indian tribe. They further argue that the STN, therefore, lacks standing to pursue a claim under the Nonintercourse Act and the ability to establish a violation of the Nonintercourse Act.

For the reasons set forth below, the motions for judgment on the pleadings are being granted. Because the court finds that the STN cannot establish a *prima facie* violation of the Nonintercourse Act, it does not reach the issue of standing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In all three matters, the STN asserts land claims pursuant to the Nonintercourse Act, which provides in relevant part that "[n]o purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." 25 U.S.C. § 177.

The lead case, *USA v. 43.47 Acres,* is a condemnation action involving the federal government's attempt to acquire title to two parcels of land (Parcel 265–2, which is composed of 43.47 acres, and Parcel 265–33, which is composed of 83.52 acres) under its powers of eminent domain. The STN has intervened, claiming to own the land on the basis that it was wrongfully conveyed in violation of the Nonintercourse Act.

The two other cases in this consolidated action, *STN v. Kent School* and *STN v. USA,* are land claim actions filed by the STN. The named defendants are parties who have a current ownership interest in parcels claimed by the STN. The STN alleges that between 1801 and 1911 those parcels were sold or transferred by the State of Connecticut in violation of the Nonintercourse Act. The STN argues that those transfers are void, illegal and of no effect, and that Kent School, the Town of Kent and CL & P should be ejected and the land should be returned to the STN.

An issue that is common to all three cases is whether the STN exists as an Indian tribe under federal law. If the STN does not qualify as an Indian tribe, it cannot establish a *prima facie* case of a violation of the Nonintercourse Act. *See Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51, 56 (2d Cir.1994) (setting forth the elements of a *prima facie* case based on a violation of the Nonintercourse Act). To obtain federal acknowledgment of tribal status, a group may petition the BIA, a bureau within the Department of the Interior to whom regulation of Indian matters has been delegated. During the federal acknowledgment process, the BIA utilizes the Department

of the Interior's procedures and policy for acknowledging that certain groups exist as Indian tribes, and a petitioner must satisfy all the mandatory criteria in 25 C.F.R. § 83.7(a)-(g) for tribal status to be acknowledged. *See* 25 C.F.R. §§ 83.2, 83.6. Such recognition is necessary before a group can take advantage of certain federal privileges and programs available to Indian tribes.

In December 1994, the STN submitted a petition to the BIA requesting acknowledgment as an Indian tribe under 25 C.F.R. pt. 83. In March 1999, the court stayed *USA v. 43.47 Acres* and *STN v. Kent School* to provide the BIA the opportunity to decide whether the STN constituted an Indian tribe for purposes of federal acknowledgment. The court vacated the stay in September 2000 but reinstated it when the Department of the Interior, the STN and the land claim defendants agreed on an expedited and enhanced administrative process by which the BIA would review and act upon the STN's petition for acknowledgment. Thus, in May 2001 the court entered a scheduling order permitting the BIA to determine the merits of the STN's petition for federal acknowledgment and, more specifically, determine whether the STN existed as an Indian tribe under federal law.

On October 11, 2005, the BIA issued a Reconsidered Final Determination (the "RFD") concluding that the STN did not satisfy two of the mandatory criteria for federal acknowledgment. Specifically, the BIA found that the STN does not meet the criteria for "community" under 25 C.F.R. § 83.7(b) or "political influence or authority" under 25 C.F.R. § 83.7(c). Reconsidered Final Determination to Decline to Acknowledge the Schaghticoke Tribal Nation, 70 Fed.Reg. 60,101 (Oct. 14, 2005). Thus, the BIA found that the STN is not

entitled to federal acknowledgment as an Indian tribe. *Id.*

On January 12, 2006, the STN appealed the RFD to this court pursuant to the Administrative Procedures Act. After extensive discovery, the parties filed cross-motions for summary judgment. In ruling on the cross-motions for summary judgment, the court concluded that the BIA's final determination was "reasonable based on the evidence before it" that the STN failed to satisfy the criteria of "community" and "political influence or authority" due to the fact that a substantial portion of the Schaghticoke refused to be enrolled as members of the STN. *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.Supp.2d 389, 418 (D.Conn.2008). The court entered judgment for the respondents. *Id.* at 422. The decision was affirmed on appeal by the Second Circuit, *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir.2009), and the Supreme Court denied certiorari, *Schaghticoke Tribal Nation v. Salazar*, —— U.S. ——, 131 S.Ct. 127, 178 L.Ed.2d 243 (2010).

Based on the foregoing, on February 7, 2012, Kent School, the Town of Kent and CL & P moved to vacate the stay in all three cases. This court granted that motion, and Kent School, the Town of Kent, CL & P and the United States moved for judgment on the pleadings.

## II. LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). When considering a Rule 12(c) motion for judgment on the pleadings, the court uses the same standard as used to address a Rule 12(b)(6) motion to dismiss for failure to state a claim. *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). When deciding a motion for judg-

ment under Rule 12(c) or a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "The issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683).

On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for factual background of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir.2009). The court's consideration may include "any written instrument attached to [the complaint] as an exhibit, ... materials incorporated in it by reference, ... and documents, that although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## III. DISCUSSION

■ "To establish a *prima facie* case of a violation of the [Nonintercourse] Act, a plaintiff must show that (1) it is an Indian tribe, (2) the land is tribal land, (3) the United States has never consented to or approved the alienation of this tribal land, and (4) the trust relationship between the United States and the tribe has not been terminated or abandoned." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 56 (2d Cir.1994). For the reasons set forth below, the court concludes that it is appropriate to defer to the BIA's determination that the STN does not qualify as an Indian tribe and finds that the STN is barred from relitigating that determination. The court also concludes that, since the STN cannot establish that it is an Indian tribe, it cannot establish a *prima facie* violation of the Nonintercourse Act.

### A. Primary Jurisdiction and Deference to Factual Findings

■ Primary jurisdiction is "[a] judicial doctrine whereby a court tends to favor allowing an agency an initial opportunity to decide an issue in a case in which the court and the agency have concurrent jurisdiction." *Black's Law Dictionary* (9th ed. 2009). This doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United*

States v. Western Pac. R.R., 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

 Primary jurisdiction "recognizes that even though Congress had not empowered an agency to pass on the *legal* issues presented by a case raising issues of federal law, the agency's expertise may, nevertheless, prove helpful to the court in resolving difficult *factual* issues." *Johnson v. Nyack Hosp.*, 964 F.2d 116, 122 (2d Cir.1992) (emphasis in original); *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). The primary jurisdiction doctrine serves two interests: (1) "it ensures uniformity and consistency in the regulation of business entrusted to a particular agency" and (2) "it is intended to recognize that, with respect to certain matters, the expert and specialized knowledge of the agencies should be ascertained before judicial consideration of the legal claim." *Nader*, 426 U.S. at 303–04, 96 S.Ct. 1978 (internal citations omitted); *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir.1988) (internal citations omitted). With respect to such technical, complicated issues of fact, primary jurisdiction "does more than prescribe the mere procedural timetable of the lawsuit. It is a doctrine allocating the lawmaking power." *Western Pac. R.R.*, 352 U.S. at 63, 77 S.Ct. 161 (internal citations omitted). In resolving such issues of fact, the doctrine thus "promot[es] the proper relationship between the courts and administrative agencies charged with particular regulatory duties." *Id.*

In *Golden Hill v. Weicker*, the Second Circuit noted that "[a] federal court, of course, retains final authority to rule on a federal statute, but should avail itself of the agency's aid in gathering facts and marshaling them to a meaningful pattern." 39 F.3d at 60. The court went on to observe that "the BIA is better qualified by virtue of its knowledge and experience to determine at the outset whether [the plaintiff] meets the criteria for tribal status." *Id.* The court also noted that "the creation ... of the acknowledgment process currently set forth in 25 C.F.R. Part 83—a comprehensive set of regulations, the BIA's experience and expertise in implementing these regulations, and the flexibility of the procedures weigh heavily in favor of a court's giving deference to the BIA." *Id.; see also, Chicago Mercantile Exch. v. Deaktor*, 414 U.S. 113, 114–15, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973) (per curiam) (holding that judicial actions should have been stayed to permit review by the Commodity Exchange Commission).

Here, the STN argues that when determining federal recognition for land disputes under the Nonintercourse Act, the court is not bound by the BIA's denial of federal recognition, but rather only bound by an approval of federal recognition. The STN does not provide authority supporting this proposition, and the court has not found any case law, regulation or precedent that supports it. In addition, the STN argues that the court has an independent obligation to determine whether the STN is an Indian tribe under the Nonintercourse Act, so the BIA approval or denial of federal acknowledgment is irrelevant. The court agrees that it must independently apply applicable law to the factual findings. However, as explained in *Golden Hill Paugussett Tribe of Indians v. Rell* when analyzing *Golden Hill v. Weicker*:

> While the Second Circuit observed that that "[r]egardless of whether the BIA were to acknowledge Golden Hill as a tribe for the purposes of federal benefits, Golden Hill must still turn to the district court for an ultimate judicial determination of its claim under the Nonintercourse Act," the court relied on the

doctrine of primary jurisdiction in holding that "the BIA is better qualified by virtue of its knowledge and experience to determine at the outset whether Golden Hill meets the criteria for tribal status" and that "[t]he BIA's resolution of these factual issues regarding tribal status will be of considerable assistance to the district court in ultimately deciding Golden Hill's Nonintercourse Act claims."

463 F.Supp.2d 192, 195 (D.Conn.2006).

In the present action, after the district court consolidated the cases, primary jurisdiction and deference to the BIA were appropriate based on several factors: "the need for uniform agency action, the degree to which expert or specialized knowledge is required, the nature of the dispute, whether the agency's determination will prove helpful, historical application of the doctrine, the agency's authority, whether the dispute lies at the heart of the agency's assignment from Congress, and the potential delay in resolving the underlying dispute." *U.S. v. 43.47 Acres of Land,* 45 F.Supp.2d 187, 191–92 (D.Conn.1999) (noting that "[n]o factor alone is determinative").

After the court stayed the case pending the BIA's determination of the STN's tribal status, the BIA rejected the STN's claim that it is an Indian tribe entitled to federal recognition and protection because the STN failed to meet all the criteria for federal acknowledgement as an Indian tribe required by 25 C.F.R. § 83.7. Reconsidered Final Determination to Decline to Acknowledge the Schaghticoke Tribal Nation, 70 Fed.Reg. 60,101. Specifically, the BIA found that the STN had presented insufficient direct evidence (1) of a distinct tribal community from 1920 to 1967 and after 1996 and (2) of "political influence or authority" over tribal members from 1801

to 1875, 1885 to 1967 and after 1996, a total of about 165 years. *Id.*

■ This court finds it appropriate to defer to the BIA's factual findings contained in the RFD for several reasons. First, the BIA is entrusted with broad responsibilities relating to Indian affairs, including making determinations regarding whether groups qualify as Indian tribes under federal law. This agency has the expertise to examine historical records and documents (including marriage records, residency patterns and other census data) to determine whether a group meets the criteria set forth in 25 C.F.R. pt. 83. Second, the STN does not articulate any substantive difference between the terms "community" and "political influence or authority" used in 25 C.F.R. pt. 83 and the terms "united in a community" and "under one leadership or government" used in *Montoya v. United States,* 180 U.S. 261, 266, 21 S.Ct. 358, 45 L.Ed. 521 (1901) (providing the test for courts to use in determining whether to recognize a group as an Indian tribe). Third, the STN does not identify any evidence of community or political influence or authority that was not presented to the BIA and which, if presented to the court, would justify the court reaching a different conclusion. Therefore, the court should defer to the BIA's determination that the STN lacks tribal status.

**B. Collateral Estoppel**

■ The STN contends that collateral estoppel does not bar it from relitigating its existence as an Indian tribe under the Nonintercourse Act. Courts "have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Savings & Loan Ass'n v. Solimi-*

*no*, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Id.* (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). For collateral estoppel to apply to an adjudicative determination:

> (1) issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigating in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). The issues "are not identical if the legal standards governing their resolution are significantly different.... Further, ... a decision by an administrative agency cannot be the basis for collateral estoppel unless it was an adjudicative decision." *Golden Hill v. Rell*, 463 F.Supp.2d at 199 (quoting *Metromedia v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992), *abrogated on other grounds as recognized by Yung v. Lee*, 432 F.3d 142, 147–48 (2d Cir.2005)).

 With respect to the first element of collateral estoppel, the STN contends that the issues in the judicial and administrative proceedings are not identical because the common law criteria for establishing tribal existence under *Montoya* differ significantly from the criteria used to establish tribal existence under the federal acknowledgment regulations, 25 C.F.R. pt. 83. However, the tests to prove tribal status under the Nonintercourse Act and through the BIA are substantially similar. For land claims under the Nonintercourse Act, courts have applied the *Montoya* test to determine tribal status. This test was developed before the BIA's regulatory process for recognition in order to determine tribal status in the absence of federal acknowledgment. *See United States v. Candelaria*, 271 U.S. 432, 441–42, 46 S.Ct. 561, 70 L.Ed. 1023 (1926). The four-part *Montoya* test requires that a plaintiff show that it is (a) "a body of Indians of the same or a similar race," (b) "united in a community," (c) "under one leadership or government" and (d) "inhabiting a particular though sometimes ill-defined territory." *Montoya*, 180 U.S. at 266, 21 S.Ct. 358.

 The federal acknowledgment regulations are explicitly derived from and are to be interpreted in light of case law concerning tribal status because "the acknowledgment criteria are based on and consistent with the past determinations of tribal existence by Congress, the courts, and the Executive Branch." *Final Determination That the Miami Nation of Indians of the State of Indiana, Inc., Do Not Exist as an Indian Tribe*, at p. I.B.1.5 (June 9, 1992), http://www.bia.gov/idc/groups/xofa/documents/text/idc–001516.pdf, *aff'd Miami Nation of Indians of Indiana, Inc. v. Babbitt*, 112 F.Supp.2d 742 (N.D.Ind.2000), *aff'd*, 255 F.3d 342 (7th Cir.2001), *cert. denied*, 534 U.S. 1129, 122 S.Ct. 1067, 151 L.Ed.2d 970 (2002). The federal acknowledgment regulations require that a petitioning group satisfy seven mandatory criteria:

> (a) The petitioner has been identified as an American Indian entity on a substantially continuous basis since 1900. Evidence that the group's character as an Indian entity has from time to time been denied shall

not be considered to be conclusive evidence that this criterion has not been met. . . .

(b) A predominant portion of the petitioning group comprises a distinct community and has existed as a community from historical times until the present. . . .

(c) The petitioner has maintained political influence or authority over its members as an autonomous entity from historical times until the present. . . .

(d) A copy of the group's present governing document including its membership criteria. In the absence of a written document, the petitioner must provide a statement describing in full its membership criteria and current governing procedures.

(e) The petitioner's membership consists of individuals who descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity. . . .

(f) The membership of the petitioning group is composed principally of persons who are not members of any acknowledged North American Indian tribe. However, under certain conditions a petitioning group may be acknowledged even if its membership is composed principally of persons whose names have appeared on rolls of, or who have been otherwise associated with, an acknowledged Indian tribe. The conditions are that the group must establish that it has functioned throughout history until the present as a separate and autonomous Indian tribal entity, that its members do not maintain a bilateral political relationship with the acknowledged tribe, and that its members have

provided written confirmation of their membership in the petitioning group.

(g) Neither the petitioner nor its members are the subject of congressional legislation that has expressly terminated or forbidden the Federal relationship.

25 C.F.R. § 83.7. Of the seven criteria, the three core criteria, which are substantially similar to the *Montoya* test, are that the petitioning group show that "(a) they have identified since 1900 as 'American Indian' or 'aboriginal' on a substantially continuous basis, (b) a predominant portion of their group comprises a distinct community and has existed as such from historical times to the present, and, (c) they have maintained tribal political influence or authority over its members as an autonomous entity throughout history until the present." *Golden Hill v. Weicker,* 39 F.3d at 59. In this case, the factual analysis with respect to the questions relating to community and relating to "political influence or authority"/"under one leadership or government" is identical under the federal acknowledgment regulations and the *Montoya* test.

The BIA found that the STN failed to satisfy the "community" criterion because the STN did not provide sufficient evidence as to being a distinct community for the periods 1920–1967 and post–1996. Reconsidered Final Determination to Decline to Acknowledge the Schaghticoke Tribal Nation, 70 Fed.Reg. at 61,102. For the period since 1996, the BIA found that the STN "did not represent the entire Schaghticoke community from 1997 to the present" because at least 33 of the 42 individuals on the STN's list of unenrolled members "specifically declined to consent to be part of the STN petitioner." *Id.* For the same reasons, the STN could not establish that it is a group "united in a

community" as required by the *Montoya* test.

The BIA also found that the STN did not satisfy the "political influence or authority" criterion because it failed to provide sufficient evidence for the periods 1801–1875, 1885–1967 and post–1996. *Id.* at 61,102–03. In particular, the BIA found that the STN did not satisfy the criterion for the period after 1996 due to the continued refusal of "most of the 42 individuals" on the unenrolled members list to be members of the STN, which it found to demonstrate that the "STN's membership list does not reflect a significant portion of the political system." *Id.* at 61,103. For the same reasons, the STN could not establish that it is a group "under one leadership or government" as required by the *Montoya* test. Thus, the first element of collateral estoppel is satisfied.

With respect to the second element of collateral estoppel, the STN argues that the BIA's final determination of tribal status is not an adjudicative decision. In determining whether an agency action constitutes an adjudicative decision, the Second Circuit has considered the factors set forth in the *Restatement (Second) of Judgments* § 83(2). *See Delamater v. Schweiker,* 721 F.2d 50, 53–54 (2d Cir.1983); *Golden Hill v. Rell,* 463 F.Supp.2d at 199. Those factors are:

(a) Adequate notice to persons who are bound by the adjudication . . . ;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut the evidence and argument of opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain the evidence and formulate legal contentions.

*Restatement (Second) of Judgments* § 83(2).

In this case, each of the five *Restatement* factors is present in the BIA process. First, the STN had adequate notice, having itself initiated the BIA proceedings. Second, the STN had the right, as well as ample opportunity, to present evidence and argument both in support of its petition and to rebut evidence and arguments by the United States and the land claim defendants. The STN had a full and fair opportunity in litigating the matter, as evidenced by the 14 years it had to prepare and submit its petition to the BIA, and by the fact that the STN was afforded several sessions of technical assistance from the Office of Federal Acknowledgment. Third, the issues were formulated in terms of the application of the federal acknowledgment regulations to the STN's evidence. The RFD produced by the BIA concluded that that the STN did not satisfy two of the mandatory criteria necessary for federal acknowledgment, specifically "community" under 25 C.F.R. § 83.7(b) and "political influence or authority" under 25 C.F.R. § 83.7(c). "The court specifically reviewed the findings reached in the

RFD that the STN had failed to establish 'community' (criterion (b)) and 'political authority' (criterion (c)) from historical times to present, finding the RFD to be thorough, rational, well reasoned, based on the directive of the [Interior Board of Indian Appeals] and based upon a reasonable interpretation of the regulations and agency precedent." *Schaghticoke Tribal Nation v. Kempthorne,* 587 F.Supp.2d 389, 418 (D.Conn.2008). Fourth, the BIA issued a final decision concerning STN's tribal status. *See* Reconsidered Final Determination to Decline to Acknowledge the Schaghticoke Tribal Nation, 70 Fed.Reg. 60,101. Thus, fifth, although the BIA administrative process does not replicate judicial proceedings in all details, it is sufficiently similar to the essential procedures courts employ to make application of the doctrine of collateral estoppel appropriate. Therefore, because the BIA process is an adjudicative one, the second element of collateral estoppel is satisfied.

With respect to the third element of collateral estoppel, the STN had a full and fair opportunity for litigating in the prior proceeding. As noted previously, the STN had 14 years to prepare and submit its petition to the BIA. Following the issuance of the scheduling order, the BIA undertook an extensive evaluation of the STN's petition in order to determine whether the STN was an Indian tribe. The administrative process included submission of evidence, argument and comment by the STN and other interested parties and the evaluation and sifting of that evidence by the Department of the Interior's professional staff. Of note, the filed administrative record included 6,774 documents, which comprised over 47,000 pages, as well as number of CD–ROM disks and DVDs with additional information. In addition, the STN was afforded several sessions of technical assistance from the Office of Federal Acknowledgment to improve the petition, cure any deficiencies and present supporting evidence. During the BIA process, the STN also had the opportunity to comment on and respond to proposed decisions. *See* 25 C.F.R. §§ 83.10(h), (i), (j), (k). Thus, the third element of collateral estoppel is satisfied.

With respect to the fourth element of collateral estoppel, the issue previously litigated was necessary to support a valid and final judgment on the merits because the acknowledgement regulations require that a petitioning group satisfy all seven mandatory criteria. Therefore, the fourth element of collateral estoppel is satisfied.

Thus, the STN is collaterally estopped from litigating the issue of its status as an Indian tribe and is bound by the BIA's determination that the STN does not qualify as an acknowledged Indian tribe. The STN, therefore, cannot establish an element of a *prima facie* violation of the Nonintercourse Act, i.e. that the STN is an Indian tribe. *See Golden Hill v. Weicker,* 39 F.3d at 56.

## IV. CONCLUSION

For the reasons set forth above, the motions for judgment on the pleadings (Doc. No. 306 and Doc. No. 316) are hereby GRANTED. In *United States v. 43.47 Acres of Land, et al.,* Docket 2: 85–cv–01078 (AWT), partial judgment shall be entered dismissing the interests of the Schaghticoke Tribal Nation. In *Schaghticoke Tribal Nation v. Kent School Corporation Inc., et al.,* Docket 98–cv–1113 (AWT), and *Schaghticoke Tribal Nation v. United States, et al.,* Docket 3:00–cv–00820(AWT), final judgment shall be entered for the defendants.

It is so ordered.